[No. 15376. Department One. May 24, 1919.]

ADOLPH BEHRENS, *Appellant,* v. COMMERCIAL WATERWAY DISTRICT No. 1, OF KING COUNTY, *Respondent.*[1]

EMINENT DOMAIN (48)—TAXATION—SPECIAL ASSESSMENTS. Since Const., art. 7, § 9, expressly limits the levy of special assessments for local improvements to property benefited, there can be no greater charge made than a sum equal to the benefits received; for otherwise there would be a taking of property without compensation in violation of art. 1, § 16 (Held obiter, on rehearing En Banc).

NAVIGABLE WATERS (2-1)—WATERWAY DISTRICTS—ASSESSMENTS—MAXIMUM BENEFITS—INTEREST—BONDS. Rem. Code, § 8192a, authorizing an assessment of land benefited for the entire cost of a commercial waterway, not exceeding the maximum amount of benefits to be received, the levy not to be over twenty-five per cent of the cost in any one year, does not authorize a levy to meet interest payments on bonds to be issued in addition to the maximum benefits found, in view of the fact that there is no provision for the payment of interest, and in view of Id., § 8199a, appropriating and pledging "payment" of the bonds out of the maximum benefits stated and declared (Held obiter, on rehearing En Banc).

STATUTES (35-1)—AMENDMENTS—TITLE—SUBJECT. The title to chapter 152, Laws of 1917, p. 616, relating to assessments and bonds of commercial waterway districts is sufficient, under Const., art. 2, § 37, providing that no act shall be amended by mere reference to its title and requiring the amendment to set forth the act amended at full length.

Appeal from a judgment of the superior court for King county, Hall, J., entered May 2, 1919, upon sustaining a demurrer to the complaint, dismissing an

[1]Reported in 181 Pac. 892; 185 Pac. 628.

action to enjoin the issuance of bonds for a waterway district. Reversed.

*Donworth, Todd & Higgins,* for appellant.

*Shorett, McLaren & Shorett,* for respondent.

CHADWICK, C. J.—The purpose of this proceeding is to test the validity of certain bonds which the respondent waterway district intends to issue.

The bonds are a general issue, to be used in part for the refunding of an outstanding issue of approximately $500,000 and to meet the future needs of the respondent as occasion may require. The total present bonded indebtedness of the district is $1,121,500.

The present plan is pursued in virtue of the authority vested in waterway districts, and if accomplished will result in the issue of bonds in such amount that the total principal of all bonds then to be outstanding; while less in total amount than the total amount of maximum benefits, will, if account be taken of the interest now accrued and to accrue on the outstanding bonds, greatly exceed the amount of total maximum benefits.

It is confessed that the property cannot be charged in a principal sum greater than the total amount of the maximum benefits, but it is contended that the interest accrued and to accrue, which is depended upon by the respondent to swell the total indebtedness to an amount in excess of the maximum benefits, is no part of the cost and expense of the improvement; that the collection of interest, while incidental to the financial plan of the district, is not a thing to be considered as an item to be balanced as cost or expense against the total of maximum benefits.

The question submitted by counsel requires a construction of Rem. Code, § 8192a.

Since the authority of respondent rests in the statute, and that alone, we are not called upon to go beyond it or search for authority to sustain general principles, except to say:

"It is the basic principle and the very life of the doctrine of special assessments that there can be no special assessment to pay for a thing which has conferred no special benefit upon the property assessed. To assess property for a thing which did not benefit it would be *pro tanto* the taking of private property for a public use without compensation, hence unconstitutional. Though the right to levy special assessments for local improvements is referable solely to the sovereign power of taxation, our state constitution, article 7, § 9, expressly limits its exercise to assessments of property benefited." *In re Shilshole Avenue,* 85 Wash. 522, 537, 148 Pac. 781.

And

"Where no authority is given by statute, interest on the assessment cannot be collected. The taxing power must be strictly exercised and the particular sum only assessed." Hamilton, Law of Special Assessments, § 721.

Under a like statute, the supreme court of New Jersey held:

"The commissioners are to determine what proportion of the costs and expenses of the improvement shall be paid by the county, and the statute directs that amount to be raised by taxation. In the exercise of the taxing power, the board of freeholders is limited, by the terms of the statute, to the imposition of the sum assessed. No authority is given to increase the burden by adding interest. The taxing power must be strictly exercised." *Paterson Avenue etc. Road Com'rs v. Board of Chosen Freeholders of Hudson,* 44 N. J. L. 570.

Keeping in mind, then, that the expense and cost of all public works may be charged to property benefited,

it is fundamental that no greater charge can be made than a sum equal to the benefits received; for if a charge be made over and above the benefit to the property, it is a taking of property without just compensation and violates art. 1, § 16 of the Bill of Rights.

One of the first considerations of a court, when called upon to construe a statute, is to gather the true intent and meaning of the legislative body, and the first resort in such cases is the context and subject-matter of the statute. Taking the act by its four corners, it, as all acts of the legislative body which assume to put an involuntary charge upon private property for the public good, should be treated as a covenant between the state and the property owner. With this view, we are convinced that the waterway commission has no power to make a charge for interest unless it be within the limit of maximum benefits.

Referring now to the original authority of the waterway commission and the constitutional right of the property owner, and which may be said to be emphasized in the act, it seems plain that it was not the intention of the legislature to charge the property benefited beyond the maximum benefits to be obtained.

It is provided that, after the entry of a judgment of the court fixing the amount of the benefits,

". . . all *the lands* included in the list of lands benefited by such improvement *shall stand charged with the entire cost and expense* of said improvement *and the other costs, expenses and charges provided for by this act, not exceeding* with respect to any lot or tract of land (so far as concerns the original cost) *the maximum amount stated or declared in such judgment to be the maximum amount of benefits* to be derived by such lot or tract of land or the owners thereof, *and all such lands shall thereafter be subject to the assessments to be levied* by the board of commissioners *for said purposes, which assessments shall be levied*

*pro rata in proportion to the maximum amount of benefits* as to each lot or tract of land as stated or declared in such judgment.'' Rem. Code, § 8192a.

We find no provision for the payment of interest. There is a charge put upon the property to the extent, and to the extent only, of the maximum benefits to pay the costs and expenses of construction. There is nothing to suggest that the legislature intended that the property of an individual owner might be subjected to a lien upon his property equal in amount to the maximum benefits and be thereafter called upon to pay anything in addition thereto, whether it be in the nature of an interest charge or otherwise. This conclusion is sustained, as we believe, by the further provisions of the section that:

''All assessments shall be levied from time to time by the board of commissioners by written notice to be addressed to and served on the county assessor of the county, . . .''

the act then providing for the collection of the assessment, and it is further provided:

''The amount of the assessment levied by the commissioners during any one year shall not exceed twenty-five per cent of the amount estimated by the board of commissioners to be necessary to pay the costs of the proceedings and the establishment of said district and waterway system, and the cost of construction of said work: . . .''

It will be observed that the commissioners are denied the power to levy an assessment for more than twenty-five per cent of the cost and expense of construction in any one year, although they are not required to levy such assessments, the legislature evidently having it in mind that, when work such as the act contemplates had been undertaken, it would extend over a period of time, and that a charge of twenty-five per cent of the amount of the benefits in any one year

until the whole sum was collected would provide ample funds for the prosecution of the work; or, to state our conclusion in a different way, it is apparent that the legislature fixed the extreme boundary of a charge upon property benefited as the maximum amount of benefits; that the charge, in the mind of the legislature, was the cost and expense of construction, and that the property owner should have four years to pay, or rather could not be compelled to discharge the entire lien in less than four years. If the amount of his benefits is, say $100, he could be assessed that sum or any sum within it, and one-fourth payment in each year for four years would entirely discharge the lien. If it were held otherwise, the lien might sustain a perpetual interest charge; the commissioners might levy an assessment from time to time for one-fourth of the amount of the lien and exhaust the entire sum in the payment of interest and charges, costs of maintenance and operation, and other charges incidental to the bonded debt of the district that were not within the mind of the legislature at the time the act was passed. For it must be regarded as true that the legislature was providing a plan for the construction of waterways, intending that a payment from time to time by the property owner would be sufficient to meet the cost of construction (there are other provisions providing for maintenance and operation), and that it did not have in mind primarily a scheme for the issuance of bonds for the profit of those who are engaged in buying and selling them.

For the purposes of this argument we must assume that the property said to be benefited is now charged with the full amount of the maximum benefits. Let us assume that the lien is $100 upon a given tract. It is the law that the property owner shall never be called

upon to pay any sum in excess of $100.   The commissioners may levy an assessment from time to time, and let us assume that the assessment is $25; the property owner pays it, and at a certain time, which time may be determined in the judgment and discretion of the commissioners, another assessment is levied, and so on, until, say in ten years, four $25 assessments are paid, or that $7, being a sum equal to the interest on $100, is collected for fourteen years.   The property owner has paid on account of the improvements the full amount of the benefits.   He sells his property. The purchaser buys it in the belief that, $100 having been paid, it is free of all liens.   It is then determined that the amount collected has gone to the payment of interest on outstanding bonds and that no part of the amount collected has been applied upon the lien.   The lien is a perpetual lien.   If an owner cannot discharge his property by the payment of a sum equal to the amount of the benefits, under whatever pretense it may be collected, he might be called upon to pay several times its value and still suffer the burden of the lien, for the commissioners are under no duty to retire his bonds.   On the contrary, they have sought and obtained authority to refund outstanding indebtedness from time to time.   Laws of 1917, ch. 152, p. 616.

Our conclusion is further strengthened by reference to § 8199a.   It is there provided that bonds may be issued, and

"In case such bonds are issued *there is hereby appropriated* and pledged *for the payment thereof a sufficient amount of all the maximum benefits* stated or declared, or to be stated or declared, by the judgment of the court against all the lands benefited and to be benefited by the improvement within such district *and there is hereby appropriated* and pledged *for such payment a sufficient amount of all sums charged against*

*such lands* and the assessments therefor *as will be sufficient to pay all such bonds as the same* or ·any part thereof *become due; and while any such bonds shall be outstanding the board* of commissioners *shall at no time levy any assessments for any purpose, other than their payment, which shall* so far impair the fund to be realized from the collection of all the assessments as to *jeopardize the payment of such bonds or to reduce such fund . below the point where there will be ample amounts still leviable to provide for the payment thereof.''*

. There being no exception in the statute, the holding is compelled that an appropriation and pledge for the "payment" of the bonds out of the maximum benefits "stated or declared" can mean only that "payment" is the discharge of the principal and interest of the bond, and that, in the payment of principal and interest, the commissioners shall not impair the fund to be realized from the collection of assessments so as to jeopardize the payments of the bonds or reduce such fund below the point where there will be ample amounts "still leviable" to provide for the payment thereof. The legislature would not have used the words "to jeopardize the payment of such bonds," and provided that the fund should not be reduced below a point where ample funds would not be "still leviable" to provide for the payment thereof, if it had had in mind that the commissioners would have a right to collect interest over and above the amount of maximum benefits, otherwise it must have provided that a property owner would have a right to discharge the lien immediately and take a full acquittance of his debt.

If this be not the true meaning of the act, the words "amounts still leviable" have no meaning and no place in the law. "Still," in its present setting, means something remaining out of an entire thing.

"Amounts still leviable" means, and can only mean, the difference or amount after the levy of one or more assessments and the amount of the maximum benefits. For, if interest be a lien on the property, it must fall within the limit of the maximum benefits, for that, by the terms of the law, is the limit of the lien. If the position of respondent be sustained and interest can be charged over and above the amount of maximum benefits, the charge cannot by any possibility be a lien, and would not, therefore, be collectible. It is not contended that the property owner is under any personal obligation to pay either the principal or interest.

The case of *Mall v. City of Portland,* 35 Ore. 89, 56 Pac. 654, is somewhat analogous. There the law provided that, as soon as a lien docket had been made up, it was the duty of the city to issue and sell, on the best terms available, its ten-year six per cent bonds, in all equal to the amount of assessments against the property affected by the improvement. The property owner had, under the terms of the law, an option to pay the assessment at the time it was made. The city thereafter levied a special tax equal to ten per cent of the amount docketed against the property charged, which, with the accrued interest at the rate of six per cent as provided in the statute, the owner tendered and demanded a receipt in full. The city refused the tender, claiming that the property owner and his property were liable for six per cent interest on the entire assessment from the time it was docketed, in addition to the special tax or tax for partial payment and interest thereon. The court held that the docketing of the assessment against the property in the lien docket did not render it due and payable; and to the contention that the provision requiring a special tax to be equal to ten per cent of the amount of bonds issued for the improvement necessarily implies that it would

be such per cent of the bonds and accrued interest on the whole assessment, the court said:

"The amount docketed as a lien against the property is necessarily the amount of the assessment, and a special tax of ten per cent thereof would clearly not include any interest thereon."

The court went so far as to hold that, although there was a privilege of discharging the whole amount of the lien, the terms of the act providing for an assessment equal to ten per cent of the indebtedness in each year did not imply that interest upon the whole assessment should be charged upon property of an owner who had not availed himself of the privilege of payment, saying:

"This language is, in terms, confined to the payment of the assessment and accrued interest thereon, and, as we have already seen, there can be no interest on an assessment of this character until it becomes due and payable."

Under the terms of our waterway act, the amount of an assessment is not due and payable at the time the decree of the court is entered, nor is there any privilege of payment, the law being that the property shall be subject to assessments to be levied by the board of commissioners and that all assessments shall be levied "from time to time," and that such assessments

"shall be levied against and apportioned to the lands in such district benefited by said improvement in proportion to the maximum benefits originally determined by the judgment of the court and such assessments *shall fall due during the then ensuing calendar year at the time of the falling due of general taxes.*" Rem. Code, § 8192a.

It would seem to require no argument to sustain our view that, if the charge is not due, interest can-

not be added to the amount of the lien until it is due and may be discharged.

A suggestion is made that an indefinite extension of the time of payment is a favor to the property owner. We are not holding that the act may not have provided for the payment of interest, but wherever an interest charge on special assessments has been sustained, the statute has given the property owner an opportunity to discharge his debt. The property owner has no such privilege in this case.

Interest is not allowed on assessments as for the use of money under a contract for its use, but as an involuntary charge to be collected as a penalty if the assessment is not paid at a time to be fixed when the property owner can pay his assessment and discharge the lien.

The legislature would have no constitutional right to put a charge of $100, or any other sum, upon the property of the citizen and say to him, ''This is a charge equal to the maximum benefits to be derived from your property, but you cannot pay it unless you pay that sum and interest to accumulate for four years, or for forty years, thereafter,'' for this would contrive a scheme, not for the benefit of the property owner, but for the benefit of strangers to the enterprise, and for no consideration; for it cannot be held to be a good or valid consideration to extend the time of payment of a debt, either public or private, to a man who does not desire to postpone it or has no need of it.

We hold, therefore, that it is the meaning of the act that the waterway commission may function within the limit of its powers; that it may collect assessments to the extent of the maximum benefits; that it may issue bonds and refund an outstanding issue, but that it may not charge the property beyond the amount of maxi-

mum benefits, whether it be under the pretext of collecting interest or for any other charge, except as provided in the act. It is the duty of the respondent to see that the primary fund, which theoretically is the amount of maximum benefits, shall not be jeopardized or be allowed to go below a point, by overissue or otherwise, where there will not be amounts "still leviable" within the limit of maximum benefits to provide for the payment thereof.

MITCHELL, TOLMAN, and MACKINTOSH, JJ., concur.

### ON REHEARING.

[*En Banc.*  November 28, 1919.]

PER CURIAM.—On rehearing *En Banc,* the result reached by the Department is adhered to by the majority of the court; the majority considering that the title of the act is sufficient under § 37 of article II of our state constitution, and declining to pass upon any other state or Federal constitutional question raised by appellant because not necessary to a determination of the case. The result reached by the Department is sustained.