[No. 36866.    En Banc.    February 4, 1965.]

THE STATE OF WASHINGTON, *on the Relation of Jerry Hagan, Respondent*, v. CHINOOK HOTEL, INC., *et al., Appellants.**

*Monheimer, Schermer, Van Fredenberg & Smith* and *Brown, Hovis, Cockrill & Roy,* for appellants.

*The Attorney General* and *Franklin K. Thorp, Assistant,* for respondent.

DONWORTH, J.—This suit was instituted by the Attorney General of the State of Washington, alleging that several Yakima hotels[1] have violated the Washington Minimum Wage Act, RCW 49.46.010, *et seq.* by failure to pay the re-

*Reported in 399 P. (2d) 8.

_____

[1] The Commercial Hotel, Inc., d/b/a the Turf Restaurant, and the Chinook Hotel, Inc. This suit is apparently a test case which will, by stipulation, bind other hotels engaged in similar practices.

quired minimum wage of $1.25 per hour to certain employees. The crucial issue is whether the statutory definition of "wages" permits the value of meals, the laundering of uniforms, and the cost of medical-welfare insurance furnished to the employees to be included in calculating wages paid, and in determining whether the minimums provided by the act have been met. This problem was created by a discrepancy in amendments to the Minimum Wage Act in the 1961 extraordinary session of the legislature. To understand the problem fully, a chronological exposition of the history of the pertinent sections of the act may be helpful at this point.

The Minimum Wage Act was passed in 1959. It defined "wage" as follows:

"Section 1. . . .
" . . .
" (2) 'Wage' means compensation due to an employee by reason of his employment, payable in legal tender of the United States or checks on banks convertable into cash on demand at full face value, *subject to such deductions, charges, or allowances as may be permitted by regulations of the director under section 5;*" (Italics ours.) Laws of 1959, chapter 294, § 1 (2).

The foregoing subsection thus referred to § 5 of the act relative to further definition of the term "wage," and that section reads:

"Sec. 5. For any occupation, the director shall make and revise such administrative regulations, including definitions of terms, as he may deem appropriate to carry out the purposes of this act or necessary to prevent the circumvention or evasion thereof and to safeguard the minimum wage rates thereby established. Such regulations may include, but are not limited to, regulations defining and governing learners and apprentices, their number, proportion, and length of service; part-time pay; bonuses; overtime pay; special pay for special or extra work; *and permitted charges to employees or allowances for board, lodging, apparel, or other facilities* or services customarily furnished by employers to employees." (Italics ours.) Laws of 1959, chapter 294, § 5.

It is apparent that the 1959 act sought to allow deductions from the minimum wage for customary items provided by an employer.

In 1961, during the extraordinary session, the legislature amended the act in an apparent response to the decision in *Peterson v. Hagan,* 56 Wn. (2d) 48, 351 P. (2d) 127 (1960), which held § 5 (codified as RCW 49.46.050) unconstitutional, *i.e.* as a delegation of legislative authority without sufficient standards. Laws of 1961, Ex. Ses., chapter 18, § 2(2), retained intact the section of the 1959 act, defining wages as follows:

"(2) 'Wage' means compensation due to an employee by reason of his employment, payable in legal tender of the United States or checks on banks convertible into cash on demand at full face value, subject to such deductions, charges, or allowances as may be permitted by regulations of the director under RCW 49.46.050."

However, the legislature, in § 7 of the 1961 amendatory legislation (Laws of 1961, Ex. Ses., chapter 18), repealed Laws of 1959, chapter 294, § 5, and RCW 49.46.050, as follows:

"Sec. 7. Sections 3 and 5, chapter 294, Laws of 1959, and RCW 49.46.030 and *49.46.050* are each repealed." (Italics ours.) Laws of 1961, Ex. Ses., chapter 18, § 7.

Thus, the 1961 amendments defined "wage" by referring to regulations under RCW 49.46.050, and then, later in the amendments, the legislature repealed RCW 49.46.050 which authorized promulgation of those regulations. Instead of attempting to remedy or correct judicially determined defects in RCW 49.46.050 by supplying appropriate standards, the legislature simply repealed the provision in its entirety, leaving statutory language which only defined "wage" as

". . . compensation due to an employee by reason of his employment, payable in legal tender of the United States or checks on banks convertible into cash on demand at full face value, subject to such deductions, charges, or allowances as may be permitted by regulations of the director under RCW 49.46.050." Laws of 1961, Ex. Ses., chapter 18, § 2(2).

The problem now facing the court is how the important statutory term "wage" is to be defined. The state argues that a mistake in draftsmanship was made by the legislature; but it is urged that, since the 1961 amendments repealed RCW 49.46.050, the real error was made when the legislature did not repeal in their entirety the deductions and allowances referred to in the definition of wages in § 2 of the act.

The state also contends that, since deductions depend upon the statutory authority of RCW 49.46.050, the repeal of that section ends the legal effect of the reference to deductions in the definition of "wage," and that deductions now simply can be ignored. Under these arguments, the state would limit the definition of wages to "legal tender," and fix the hourly wage of the employees involved in this case at $1.25 per hour, flatly, and without any deductions whatsoever.

The trial court accepted the foregoing arguments, and reached the following conclusion of law:

"That the following definition of 'wage' . . . must be read as follows:

" ' "Wage" means compensation due to the employee by reason of his employment, payable in legal tender of the United States or checks on banks convertible into cash on demand at full face value'

and the balance of said definition reading as follows:

" 'subject to such deductions, charges, or allowances as may be permitted by regulations of the director under RCW 49.46.050' is surplusage and shall not be considered by the Court."

The trial court also ruled that "uniforms, laundry allowance, health and welfare, and pension contributions" could not be considered in calculating "wages," and, thus, in determining compliance with the Minimum Wage Act.

In *Peterson v. Hagan, supra,* we held that § 5 of the 1959 act was null and void because the legislature had failed to specify any standards to guide the Director of Labor and Industries in the promulgation of rules and regulations. This omission was declared to be an attempt to delegate

legislative power to the director in violation of the seventh amendment to the state constitution.

The impact of our decision on the 1959 Minimum Wage Act was the striking out of § 5, and also, *that part* of § 1, subdivision (2), defining wages, which, *after* stating the term to mean compensation due to an employee by reason of his employment payable in legal tender or equivalent, added the following:

" . . . subject to such deductions, charges, or allowances as may be permitted by regulations of the director under section 5."

The remainder of the 1959 act continued to be in full force and effect.

Thereafter, as above indicated, in the extraordinary session of 1961, the legislature enacted chapter 18, entitled:

"An Act Relating to wages and employment; adding two new sections to chapter 294, Laws of 1959 and to chapter 49.46 RCW; and amending sections 1, 2, 12 and 14, chapter 294, Laws of 1959 and RCW 49.46.010, 49.46.020, 49.46.120 and 49.46.910; and repealing sections 3 and 5, chapter 294, Laws of 1959 and RCW 49.46.030 and 49.46.050."

By this 1961 enactment, the definition of wages contained in the 1959 act was re-enacted in identical language except that the words "under RCW 49.46.050" were substituted for the words "under section 5." Furthermore, sections 3 and 5 of the 1959 act were specifically repealed.

■ The result of the passage of the 1961 act, in our opinion, was to leave the qualifying clause in subdivision 2 of § 2 without any functional support whatever. Thus, the repeal of § 5 (RCW 49.46.050) necessarily rendered meaningless the phrase in the definition of wages, reading:

" . . . subject to such deductions, charges, or allowances as may be permitted by regulations of the director under RCW 49.46.050."
(The foregoing language is an excerpt from RCW 49.46-.010(2). The code reference is the same as § 5 of the 1959 act.)

Consequently, the definition of wages is now still the same as it was *immediately after* our decision in *Peterson v.*

*Hagan, supra.* In other words, the word "wages" means compensation due to an employee by reason of his employment payable in legal tender or equivalent.

■ The foregoing describes what the legislature has done in the premises, and it matters not whether it was done intentionally or by inadvertence. Courts cannot cure such errors in legislation even if the legislature, by inadvertence, brought about the result described above. It is, under our constitution, purely a legislative problem. Const. Art. 2, § 1, provides:

"The legislative authority of the state of Washington shall be vested in the legislature . . . ."

We find no ambiguity in this legislation. The impact of the 1961 act on the 1959 act is very clear.

This court has many times held that it will not insert, in legislative acts, words which were seemingly unintentionally omitted, nor disregard any words which may appear to us to have been inadvertently included.

The following quotations from some of our decisions so holding may be of interest.

In *Vannoy v. Pacific Power & Light Co.,* 59 Wn. (2d) 623, 629, 369 P. (2d) 848 (1962), we stated:

" . . . The words may have been omitted inadvertently, as appellant contends, but it is beyond the power and function of this court to read them in. See *In re Baker's Estate,* 49 Wn. (2d) 609, 304 P. (2d) 1051 (1956), and *McKay v. Department of Labor & Industries,* 180 Wash. 191, 39 P. (2d) 997, 97 A.L.R. 1489 (1934). The rule is neither vague nor ambiguous, nor irrational on its face. Had the legislature intended the second sentence of rule 14 to apply to inside wiring only, we presume that the rule would so state."

In *In re Baker's Estate,* 49 Wn. (2d) 609, 610, 304 P. (2d) 1051 (1956), it was said:

"The wording of the statute is plain and unambiguous. We have held that, where there is no ambiguity in the statute, there is nothing for the court to interpret. *Public Hospital Dist. No. 2 of Okanogan County v. Taxpayers of Public Hospital Dist. No. 2 of Okanogan County,* 44 Wn. (2d) 623, 624, 269 P. (2d) 594 (1954), and case cited."

In *State v. Houck*, 32 Wn. (2d) 681, 685, 203 P. (2d) 693 (1949), this court stated:

"The words and phrases used in statutes are interpreted in accordance with their common meaning, and this regardless of the policy of enacting it, or the seeming confusion that may follow its enforcement. *State v. Miller*, 72 Wash. 154, 129 Pac. 1100."

In *Department of Labor & Industries v. Cook*, 44 Wn. (2d) 671, 677, 269 P. (2d) 962 (1954), the following statement of the rule is found:

"But, whether the seeming lack of logic in this situation is the product of inadvertence or intention, the fact remains that the act lacks such a provision. The court cannot read into a statute anything which it may conceive that the legislature has unintentionally left out. *Seattle Ass'n of Credit Men v. General Motors Acceptance Corp.*, 188 Wash. 635, 63 P. (2d) 359; *Maryland Cas. Co. v. Tacoma*, 199 Wash. 384, 92 P. (2d) 203."

In *McKay v. Department of Labor & Industries*, 180 Wash. 191, 194, 39 P. (2d) 997, 98 A.L.R. 990 (1934), this court said:

"The plain and unambiguous language of the statute provides the compensation to respondent. In construing a statute, it is safer always not to add to, or subtract from, the language of the statute unless imperatively required to make it a rational statute. . . ."

In *Lynch v. Department of Labor & Industries*, 19 Wn. (2d) 802, 806, 145 P. (2d) 265 (1944), this court stated:

"In the process of arriving at the intent of the legislative body, the first resort of the courts is to the context and subject matter of the legislation, because the intention of the lawmaker is to be deduced, if possible, from what it said. *Behrens v. Commercial Waterway Dist. No. 1*, 107 Wash. 155, 181 Pac. 892, 185 Pac. 628; *In re Sanborn*, 159 Wash. 112, 292 Pac. 259."

As we read these cases, the rule established therein is that, even assuming that the legislature did make a mistake in amending the 1959 act, this court does not have the function of correcting legislative mistakes. Its only function is to interpret vague or ambiguous language. There is

nothing ambiguous in the statute before us. It defines "wages" as meaning compensation due to an employee by reason of his employment payable in legal tender or equivalent. There is no need for judicial interpretation since its meaning is clear.

Assuming that the legislature intended to either delete the words "subject to such deductions, charges, or allowances as may be permitted by regulations of the director under RCW 49.46.050" or replace the repealed section with a new provision designated as RCW 49.46.050, the fact remains that the legislature did neither. As this court said in *St. Paul & Tacoma Lbr. Co. v. State,* 40 Wn. (2d) 347, 351, 243 P. (2d) 474 (1952):

". . . It seems to us that there can be no question that by these amendments the legislature intended to reach the exact situation which we have before us. To quote again a terse and apropos statement: 'The intention of the legislature is to be deduced from what it said.' *In re Sanborn,* 159 Wash. 112, 118, 292 Pac. 259."

The legislature has plainly defined the term "wages." This court has no power under the state constitution to change this definition. The constitutional role of the courts under the separation of powers does not permit us to do so.

Mr. Justice Harlan, in his dissent in *Wesberry v. Sanders,* 376 U. S. 1, 48, 11 L. Ed. (2d) 481, 84 S. Ct. 526 (1964), states the applicable rule as follows:

"This Court, no less than all other branches of the Government, is bound by the Constitution. The Constitution does not confer on the Court blanket authority to step into every situation where the political [referring to the legislative] branch may be thought to have fallen short. The stability of this institution ultimately depends not only upon its being alert to keep the other branches of government within constitutional bounds but equally upon recognition of the limitations on the Court's own functions in the constitutional system."

The judgment of the trial court is affirmed. The problem (if there be one) is for the legislature, which, under our constitution, has sole power to deal with it.

HILL, WEAVER, OTT, HUNTER, HAMILTON, and HALE, JJ., concur.

FINLEY, J. (dissenting)—I agree with that portion of the majority opinion stating the facts and describing the problem of language mechanics involved in this case. However, I cannot agree with the state's arguments or with the reasoning of the majority supporting and affirming the decision of the trial court. More particularly, I do not agree (1) that the legislature included by mistake the proviso for or relating to deductions and allowances in the 1961 amendatory definition of minimum wages; (2) that the language of this proviso is surplusage, and (3) that it can be ignored, excised, deleted, or in effect vetoed by this court. I am convinced the contrary is more reasonable or rational: First, that the action of the legislature was deliberate and purposeful in its choice of and enactment of the proviso language, which, indubitably, refers to deductions and allowances, incorporates and makes these concepts a part of the statute and therefore legally applicable or potent in determining the state minimum wage; and second, that the legislature did make a mistake in draftsmanship in repealing RCW 49.46.050 without adding substitute language to supplement the reference to deductions and allowances, prescribing in detail legally acceptable standards to guide the director of the Department of Labor and Industries. as indicated in the decision in the *Hagan* case, (*Peterson v. Hagan,* 56 Wn. (2d) 48, 351 P. (2d) 127 (1960)). I think that either the majority conclusion or my dissenting conclusion may be reasonably inferred from the face of the 1961 amendments, and it seems to me no court can, with complete sanguinity and absolute accuracy, decide in which respect an error was made by the legislative branch. Perhaps it should be noted that, in embracing either of the opposing or alternate conclusions and grounding a decision and disposition on one or the other, the court risks a blithe accusation from the litigants or counsel on one side or the other of this litigation that we have engaged in judicial legislation—or, perhaps worse, that we have

legislated judicially. Any such criticism from either side has an aura of naivete, intellectual myopia, or irresponsibility. It ignores or refuses to recognize statutory interpretation for what it is—the performance of a basic and necessary deciding function by the judicial branch. But there is some reassurance in the fact—and in the inherent common sense and necessity—that it is an ancient and orthodox function of the judicial branch to ameliorate defects, inconsistencies, and ambiguities in language which, on occasion, characterize the work product of the legislative branch. And it may be added that the function certainly is recognized and accepted by respectable modern authorities.[2]

Judicial work would be more pleasant, perhaps nicer and considerably easier, (a) if we could compliment opposing counsel for making fine, though diametrically antithetical presentations and interpretations of a statute; and (b) if we could advise such opposing advocates that we cannot arrive at absolute truth in evaluating arguments and applying the statute, and consequently, that we must refrain from deciding the case, and will have to leave counsel and their clients to their own devices in settling their differences. But our business is making decisions and deciding cases. And, insofar as common sense, experience, and general rules or principles of statutory interpretation enable us to arrive at reasonable solutions of statutory problems, we must do so.

As indicated above, I reject the state's argument that, since the deductions provided for in § 2 depend upon RCW 49.46.050, the repeal of RCW 49.46.050 permits this court to ignore that which in effect is a proviso respecting deductions. The state supported this argument with an assertion that this construction would not increase the statutory minimum wage. This is misleading. Perhaps in a technical

[2]See Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes are to be Construed*, 3 Vand. L. Rev. 395 (1950); Loyd, *Equity of a Statute*, 58 U. Pa. L. Rev. 76 (1909); Radin, *Realism in Statutory Interpretation and Elsewhere*, 23 Cal. L. Rev. 156 (1934).

sense the statutory specification of a precise amount as the state minimum wage would not be changed. But as a practical matter the elimination of a deduction as to free meals results in an addition to the minimum wage; that is, something of value is received by the employee and contributed or paid by the employer over and above the exact amount or value received, as specified in the statute. So, realistically, the end result of the state's argument in this appeal actually raises the statutory minimum wage to a higher value or figure by ignoring or not giving effect to any possible deductions. I believe such a result is inappropriate and unnecessary, and can and should be avoided with propriety by refusing to ignore the pertinent proviso and by noting and giving effect to this language—even conceding its imperfect state—as part of the effort to interpret the statute reasonably. In support of this I can say that I am hesitant to by-pass what seems to me a legislative intent to recognize and allow customary industry practices respecting deductions and allowances in determining the statutory minimum wage. I am even more reluctant to emasculate this ostensibly pertinent proviso in the absence of a clear direction by the legislature that such was intended. I believe that this court would better perform its traditional function of defining ambiguous passages of statutes if it seeks to make what seems to me to be reason and common sense out of this statute by considering it as a whole and in the light of the legislative and judicial history of this enactment and its social implications.

Judicial construction of statutes as a time honored function has followed the rule that the court must give statutory language its "plain and ordinary meaning." *Crown Zellerbach Corp. v. State,* 53 Wn. (2d) 813, 815, 328 P. (2d) 884 (1958). A further lesson or rule from the fact of judicial interpretation or construction is that "where an act has a doubtful or ambiguous meaning, it is the duty of the court to adopt a construction that is reasonably liberal, in furtherance of the obvious or manifest purpose of the legislature." *State v. Rinkes,* 49 Wn. (2d) 664, 667, 306 P. (2d) 205 (1957).

I think the "plain and ordinary meaning" of the term *wages* in the absence of a clear and pertinent statutory definition is value received. "Generally speaking, the term wages means compensation for labor or services, which may be in the form of money paid or other value given, such as board, lodging or clothes." *Pacific American Fisheries, Inc. v. United States* (9th Cir. 1943), 138 F. (2d) 464. It seems unreasonable to me to limit the definition of *wages* to legal tender without a clear, unambiguous legislative mandate to that effect. The state, in urging us to limit "wages" to legal tender, is disregarding economic reality, industry, management and labor practices in this important area.

It is of interest that other departments of state government recognize in their rules and practices that free meals furnished to employees have an actual or real economic value. In fact, the State Tax Commission requires the defendant hotels to pay sales tax on meals given to employees at a valuation of 40 cents a meal; and the same department includes these meals in the computation of the business and occupation tax at the same rate. These regulations and results taxwise are in a different field or category of the law, and of course are not a mandate controlling judicial determination of the definition of wages in the instant case. But these other administrative practices or determinations certainly add weight to a determination that meals constitute value which more likely than not should and can be reasonably included in a definition of wages by this court in relation to the minimum wage act.

Some support for a resultant that meals contribute a significant value in relation to wages is found in the typical collective bargaining agreement covering this industry:

"In addition to the wages provided for in this Agreement, all employees . . . shall be furnished wholesome and palatable food. In cases of establishments that do not serve wholesome and palatable food to the employees, said employees shall receive $1.00 per day, or proportion thereof, in lieu of meals herein provided for." (Working Agreement and Wage Scale between Seattle Local Joint Executive

Board and Washington State Restaurant Association, Inc., et al, § 4, p. 9 (Defendants' Exhibit 4).)

Customary provisions of collective bargaining contracts surely do not control judicial construction or definition of the term "wage," but this factor or consideration certainly provides insight into the "plain and ordinary meaning" of the common term "wages."

Thus, by the reasoning and logic indicated, and in the frame of reference the issue herein is presented, I reach conclusions: (1) that the term "wages" as used in the Minimum Wage Act means "value received," (2) that meals furnished to employees under the circumstances noted herein constitute "value received," (3) are includable in calculating and determining *minimum wages* required by the act to be paid by the hotels involved in this lawsuit, and finally (4) that the decision of the superior court should be reversed.

ROSELLINI, C. J., concurs with FINLEY, J.