[No. 3831. Decided January 14, 1902.]

M. BILLINGS, *Appellant,* v. STATE OF WASHINGTON, *Repondent.*

SUIT AGAINST STATE—LIABILITY FOR MISFEASANCE OF PUBLIC OFFICER.

A state is not liable for damages suffered by an individual by reason of the negligence or malfeasance of one of its officers while engaged in the discharge of his official duties, in the absence of a statute making it liable for such damages.

SAME.

Where an applicant for the purchase of public lands suffers injury because of the delay of the land commissioner in the issuance to him of the contract to which he is entitled under the law, his cause of action is based on the damage caused by

the misconduct or laches of the commissioner, and is not against the state as a party to a contract.

SAME — STATUTORY WAIVER OF IMMUNITY FROM SUIT — EFFECT.

A statute permitting suits to be brought against a state does not of itself subject the state to a liability that did not exist before, but is merely a waiver of the state's immunity from suit.

Appeal from Superior Court, Thurston County.—Hon. CHARLES W. HODGDON, Judge. Affirmed.

*Allen Weir,* for appellant.

*W. B. Stratton,* Attorney General, and *Thomas M. Vance,* for the State.

The opinion of the court was delivered by

ANDERS, J.—This action was instituted to recover from the state of Washington damages alleged to have resulted by reason of delay on the part of the commissioner of public lands in issuing to plaintiff (appellant here) a contract of sale of certain tide lands. It appears from the complaint herein that on January 7, 1897, the plaintiff made application in writing, in due and regular form, to the commissioner of public lands, to purchase certain described tide lands in Island county owned by the state and subject to sale; that plaintiff's said application was duly filed in the office of the commissioner of public lands; that thereafter, and prior to the 12th day of March, 1897, the plaintiff did and performed all the acts and things necessary to entitle him to a contract of purchase of said tide land from defendant, including the payment to defendant of the part of the purchase price of the same required by law; that on March 25, 1897, and continuously thereafter until March 7, 1900, the plaintiff was entitled to have and receive from the defendant a contract of purchase of all of said tide land, which contract would have entitled this

plaintiff to the possession and beneficial use of the same; that on May 16, 1897, the plaintiff filed with the commissioner of public lands, who was charged with the duty of executing and issuing contracts of sale of tide lands for the state, a written demand for a contract of sale conveying said tide lands to plaintiff; that the said commissioner then and there refused and continued to refuse until March 7, 1900, to execute and deliver to plaintiff any contract conveying to plaintiff any portion of said tide land; that by reason of such refusal the plaintiff was during said time unable to obtain possession of any portion of said land, and was denied the beneficial use thereof, although entitled thereto. The complaint also states the monthly rental value of the lands during the time plaintiff alleges he was kept out of possession by the failure to deliver the contract of sale, the amount expended by this plaintiff in this court in enforcing the execution and delivery of the contract of sale to him by the commissioner of public lands, and prays judgment for the damages alleged to have been sustained by reason of the facts and matters set forth therein. A demurrer was interposed to the complaint on the grounds: (1) That the court was without jurisdiction to hear and determine the cause; and (2) that the complaint failed to state facts sufficient to constitute a cause of action against the defendant. The demurrer was sustained, and, the plaintiff having declined to plead further, the court entered judgment dismissing the action at the cost of plaintiff. From this judgment the plaintiff has appealed, and the decision of the court sustaining the demurrer is assigned as error.

No objection is made here to the jurisdiction of the superior court. Nor is there any controversy in regard to the facts of the case. The sole question to be determined is whether the complaint herein states a cause of action

against the respondent; or, in other words, whether the
state, under our statute, is liable for damages suffered by
an individual by reason of the negligence or malfeasance of
one of its officers occurring while engaged in the discharge
of his official duty.   The state constitution (art. 2, § 26)
ordains that, "The legislature shall direct by law in what
manner and in what courts suits may be brought against
the state."   This constitutional provision was made oper-
ative by an act of the legislature, approved March 20, 1895
(Session Laws, p. 188), the first section of which (Bal.
Code, § 5608) provides that, "Any person or corporation
having any claim against the state of Washington shall
have the right to begin an action against the state in the
superior court of Thurston county."   And the word
"claim," used in this section of the act of March 20, 1895,
was construed by this court, in *Northwestern, etc., Bank
v. State,* 18 Wash. 73 (50 Pac. 586, 42 L. R. A. 33), as
synonymous with "cause of action."   That action was in-
stituted for the purpose of having a judgment awarding a
lien in favor of the state against certain lands in King
county decreed to be subject to a prior mortgage held by
plaintiff on said lands.   The superior court held, upon
demurrer to the complaint, that it had no jurisdiction of
the cause; but this court, on appeal, reversed the judg-
ment and directed the lower court to overrule the de-
murrer.   It is conceded by the learned counsel for appel-
lant that it is only by virtue of the statute that an action
can be maintained against the state.   But he earnestly in-
sists that the state, by the act of the legislature above men-
tioned, entirely waived its immunity from suits in its
courts, and placed itself on an equality with any individual
with whom it might thereafter transact business, and that
this court so interpreted the statute in the case of *North-*

*western, etc., Bank v. State, supra.* It is true that this
court observed in that case that it was intended by the
constitution that "the state might be permitted to be sued
in like manner as an individual, and it was left to the
legislature to determine in what court such suits should
be brought, and to prescribe the method of procedure."
But it must not be inferred from the language there used
that the court decided, or intended to decide, that the
right to maintain suits against the state by an individual
is, under all circumstances and in all cases, co-extensive or
co-equal with the right of one individual to maintain an
action against another. The only question considered and
determined in that case was whether this act of March 20,
1895, conferred jurisdiction upon the superior court of
Thurston county to hear and determine the matter in con-
troversy in that particular action. The attorney general
contended that the word "claim," as used in § 1 of the
statute, meant a claim for money only, and hence there
was nothing in the statute authorizing an action against
the state for the equitable relief demanded by the plain-
tiff. This court, however, concluded that the action was
warranted by the statute, and accordingly held that the
objection to the jurisdiction of the court was untenable.
Bearing in mind what was actually decided in that case,
as well as the facts upon which the decision was based, we
are unable to see how the contention of the appellant that
the decision therein is decisive of the case at bar can pos-
sibly be sustained. As we have said, the only question to
be determined in this case is whether the complaint states
a cause of action, and that must be determined by the ap-
plication of settled principles of law to the facts admitted
by the demurrer. If, therefore, the state is liable to the
appellant, under the law applicable to the facts stated, for

the damages claimed by him, it necessarily follows that the complaint states a cause of action and that the judgment must be reversed. But we are clearly of the opinion that the state is not legally responsible for the alleged acts of one of its officers, and that the judgment appealed from was right and ought to be affirmed. It is frankly conceded by counsel for appellant that the statute permitting the state to be sued did not create any liability on the part of the state which did not exist at the time of its passage, and that concession seems to be in accordance with the unbroken current of authority upon the subject. See *State v. Hill,* 54 Ala. 67; *Clark v. State,* 7 Coldw. 306; *Green v. State,* 73 Cal. 29 (14 Pac. 610); 23 Am. & Eng. Enc. Law, p. 86.

The state, by consenting to be sued, did not waive the right to defend, upon any legal ground, such actions as any person or corporation having a claim against it might thereafter see fit to "begin" in the superior court of Thurston county. In other words, the state has retained all its legal rights as a defendant in an action, and has waived nothing but its former immunity from suits. It has not consented, either expressly or impliedly, to become responsible for the misconduct or negligence of its officers or agents; and, in the absence of a statute making it liable in damages therefor, no such action as the present one can be maintained against the state. Story, Agency, § 319; *Gibbons v. United States,* 8 Wall. 274; *Clodfelter v. State,* 86 N. C. 51 (41 Am. Rep. 440); *Clark v. State, supra; State v. Hill, supra; Langford v. United States,* 101 U. S. 341. Touching the liability of a state for the wrongful acts of its public officials, the supreme court of North Carolina, in *Clodfelter v. State, supra,* said:

"That the doctrine of *respondeat superior,* applicable to the relations of principal and agent created between

other persons, does not prevail against the sovereign in the necessary employment of public agents, is too well settled upon authority and practice to admit of controversy. 'No government,' says Mr. Justice MILLER, 'has ever held itself liable to individuals for the misfeasance, laches, or unauthorized exercise of power by its officers and agents.' *Gibbons v. United States,* 8 Wall. 269. And Judge STORY declares in his work on Agency, section 319: 'The government does not undertake to guarantee to any person the fidelity of any of the officers or agents whom it employs, since that would involve it in all its operations in endless embarrassments and difficulties and losses, which would be subversive of the public interests.' "

The language of Judge STORY, quoted in the *Clodfelter Case* above cited, is also quoted and approved by Mr. Justice MILLER in *Gibbons v. United States.* It is further stated in the opinion of the court in *Gibbons v. United States,* that "The general principle which we have already stated as applicable to all governments forbids, on a policy imposed by necessity, that they should hold themselves liable for the unauthorized wrongs inflicted by their officers on the citizen, though occurring while engaged in the discharge of official duties." The constitution of the state of Tennessee provided that "suits may be brought against the state in such manner and in such courts as the legislature may by law direct," and the Code of the state provided that "actions may be instituted against the state under the same rules and regulations that govern actions between private persons." In determining the scope and effect of those provisions, the supreme court of that state, in *Clark v. State, supra,* expressed its views upon the subject as follows:

"The constitutional and statutory provisions provide a remedy for any existing cause of action, but do not change the relation between the state and the citizen so as to create any liability or responsibility on the part of the state. The

relation of the state to the citizen is not one of contract, which implies an undertaking upon good consideration, on the part of the state, that all the functions of government shall be duly performed, or that it will employ none but capable and faithful agents. If an officer or agent of the state, in violation of law, commits an act to the injury of the citizen, it is an act beyond the scope of his agency, unauthorized by his principal; and the state is not liable therefor to the party injured."

And the same doctrine is clearly announced by the supreme court of Alabama in *State v. Hill, supra,* and is recognized as established law in the other cases above cited. In fact, we have not been able to find any case in which a contrary rule has been enunciated under a statute such as ours. The case of *Green v. State,* 73 Cal. 29, is cited, among others, and especially relied on by counsel for appellant as an authority sustaining his contention, but we do not think that the case is in point here. That action was brought under a statute expressly authorizing the plaintiffs to institute an action against the state for damages alleged to have been caused to their property by reason of the construction of a canal by the levee commissioners of the city of Sacramento. And even in that case the court held that the act of the legislature authorizing the bringing of the action was not an admission by the state of its liability for the alleged damages, nor a waiver of any legal defense it might have to the action, except its immunity from suit. The case of *Ballou v. State,* 111 N. Y. 496 (18 N. E. 627), is also cited by appellant in support of his alleged right of recovery in this action. That was an appeal from an award of the "board of claims." The claimant presented a claim to the board for damages caused by an obstruction in a sewer belonging to the state by which water was forced through claimant's drain, connecting with the sewer, into his cellar. The

board of claims dismissed the claim of plaintiff's testator, and the court of appeals reversed this award for the reason that the claim was meritorious and had "foundation in law." The law upon which the claim was founded was a statute authorizing the appraisal of claims against the state founded upon the negligence of its officers in the use and management of the canals. Laws N. Y. 1870, ch. 321; *Bowen v. State,* 108 N. Y. 166 (15 N. E. 56). That case was, no doubt, decided in accordance with the provisions of the statute, but it is certainly without force as an authority upon the question here under consideration.

It is ingeniously argued by counsel that appellant is not suing the state because of the wrongful act or omission of one of its officers, but is suing it as a party to a contract, and that the fact that the damage claimed resulted because of an act or omission on the part of an officer of the state is merely incidental. But it must be remembered that the statute applicable to this case provides that the commissioner of public lands shall execute in writing a contract of sale, upon the conditions therein specified, of certain lands of the state, including its tide lands, which, if complied with by the purchaser, shall entitle the latter to a patent from the state. It is admitted that such a contract has in fact been executed and received by appellant, and it therefore follows that, if it was not executed as soon as it should have been, and the appellant was damaged thereby, such damage was caused by the misconduct or laches of the commissioner, for which the state never agreed to become responsible.

The judgment is affirmed.

REAVIS, C. J., and FULLERTON, DUNBAR and MOUNT, JJ., concur.