[No. 39749.   Department Two.   January 9, 1969.]

THE BOEING COMPANY, *Appellant,* v. KING COUNTY, *Respondent.**

*Reported in 449 P.2d 404.

*Holman, Marion, Perkins, Coie & Stone, Andrew M. Williams,* and *Graham H. Fernald,* for appellant.

*Charles O. Carroll, James E. Kennedy* and *William L. Paul, Jr.,* for respondent.

STAFFORD, J.†—This is an action to secure the refund of 1966 personal property taxes paid under protest by The Boeing Company (hereinafter called Boeing).

Prior to 1965, Boeing and A. J. Steen, the King County assessor, developed a procedure for determining the assessed value of Boeing's personal property. Early each year Boeing prepared an evaluation of the total true and fair value of its personal property in each of the county's tax code areas. Thereafter, the assessor reviewed Boeing's computations and other data in order to determine the assessed value of the property. Prior to 1965 the assessed value, with minor exceptions, was 33 1/3 per cent of the true and fair value.

In 1965, Boeing prepared its valuation data as usual and notified Mr. Steen that the information was ready for submission. At that time the assessor informed them that he was considering a reduction in the assessment ratio, but he desired to see the values before making an assessment.

Accordingly, Boeing compiled a preliminary work sheet which set out, by tax area, the true and fair value of its personal property, compared that value with the prior year's value, and gave the effect of applying to that value assessment ratios of 33 1/3 per cent, 30 per cent, and 25 per cent. This information had not been requested by Mr. Steen, but it was furnished to give him a convenient measure of the effect of certain reductions in the assessment ratio.

---

†Judge Stafford is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

On June 15, 1965, Mr. Steen notified Boeing that an assessment ratio of 29 per cent would be applied to Boeing's personal property located in Seattle, and that a ratio of 25 per cent would be applied to its personal property located elsewhere in King County. Thereafter, Boeing used the assessment ratios and computed the total assessed value of its personal property and the assessor then transcribed these figures onto the King County assessment sheets.

Neither the July, 1965 County Board of Equalization nor the State Board of Equalization changed the assessed valuation as determined by the assessor. The equalized assessed value adopted for Boeing's personal property was $47,245,050. In due course, Boeing paid a personal property tax for 1966 totaling $3,374,611.66. It was paid in installments on April 29 and October 31, 1966.

In the spring of 1966, Mr. Allen B. Morgan replaced Mr. Steen as King County assessor. The reduced assessment ratio was discovered and Boeing was notified that its assessment ratios were lower than the 33 1/3 per cent applied to other King County taxpayers. The record does not indicate that Boeing either requested the reduction or that they were aware that they had received an advantage not enjoyed by other taxpayers.

Subsequent to this discovery, Mr. Morgan requested the State Tax Commission (now Department of Revenue of the state of Washington) to reconvene the July, 1965 session of the King County Board of Equalization. Pursuant to this request, the State Tax Commission ordered the July, 1965 session of the County Board of Equalization to reconvene on March 21, 1967 for the purpose of examining Boeing's 1965 personal property tax assessments and for the purpose of taking any action that might be necessary for the equalization thereof.

Thereafter, hearings were held, following which the board increased the assessed value of Boeing's personal property by applying an assessment ratio of 33 1/3 per cent to the true and fair value of all of its personal property in King County. On March 27, 1967 the county treasurer was

notified of the increased assessment, and on March 29, 1967 the actual dollar figure of the supplemental tax was entered on the rolls. On May 2, 1967 the supplemental tax, for the tax year 1966, of $871,674.67 was paid under protest. Interest was paid thereon from March 27, 1967 to May 2, 1967 in the amount of $5,840.21.

Boeing's action to secure the refund of the supplemental tax and interest thereon was dismissed by the trial court and they appeal.

Boeing maintains that after the assessment process has been completed in any year, the assessed valuation is final. Further, they assert that any action of a reconvened county board of equalization, taken in a later year, is void because it lacks statutory authority. This argument stems from the fact that neither RCW 84.52.090[1] nor RCW 84.56.400[2] authorize county boards of equalization to change the as-

---

[1]RCW 84.52.090 reads in part as follows: "The county assessor shall make a record of all errors in descriptions, double assessments, or manifest errors in assessment appearing on the assessment list at the time of the extension of the rolls, and . . . file said record with the county board of equalization on the third Monday in November . . . succeeding the annual meeting of the county board of equalization. The county board of equalization shall reconvene on such day for the sole purpose of considering such errors . . . and shall proceed to correct the same, but . . . shall have no authority to change the assessed valuation of the property . . . or to reduce the aggregate amount of the assessed valuation . . . except only insofar as the same may be affected by the corrections ordered based on the record submitted by the county assessor."

[2]RCW 84.56.400 reads in part as follows: "The county treasurer shall . . . file with the county board of equalization a record, . . . relating to such manifest errors in description, double assessments, clerical errors in extending the rolls, and such manifest errors in the listing of property which do not involve a revaluation of property . . . .

"The county board of equalization . . . on the third Monday in April shall . . . only correct such matters as are set forth in such record, but it shall have no power to change or alter the assessment of any person, or change the aggregate value of the taxable property . . . except insofar as it is necessary to correct the errors hereinbefore mentioned . . . .

"The board at its April meeting shall consider only matters referred to it by the records of the county treasurer. . . ."

sessed valuation after July in any year (*i.e.* November and April).

Boeing recognizes that RCW 84.48.010, which applies to county boards of equalization, reads in part as follows:

> [*I*]*n addition* to the several times fixed by statute, *any county board of equalization* may be reconvened for special or general purposes *at any time* by order of the state tax commission. (Italics ours.)

Boeing also acknowledges that pursuant to RCW 84.08.060 the State Tax Commission is empowered to require:

> [*A*]*ny county board of equalization* to reconvene *at any time* for the purpose of performing or completing *any duty* or taking *any action* it might lawfully have performed or taken at any of its previous regular July . . . meetings. (Italics ours.)

Nevertheless, Boeing submits that the phrase "at any time", used in the foregoing statutes, must be interpreted within the framework of RCW 84.52.090 and RCW 84.56.400, which deny to the county boards of equalization the authority to change assessed valuations after the July meeting. Viewed in this perspective, they maintain that the phrase "at any time" does not actually mean "at any time". Under this interpretation, neither RCW 84.48.010 nor RCW 84.08.060 are open-ended grants of power to the State Tax Commission which enable it to reconvene "any county board of equalization . . . *at any time.*" (Italics ours.) They only give an apparent power which is limited to the mere function of providing the July board with an extension if they need additional time to act *prior* to the levy date.

Boeing's position is not well taken. The general duties of the State Tax Commission are found in RCW 84.08.010 (1).[3]

---

[3]RCW 84.08.010(1): *"Exercise general supervision and control over the administration of the assessment and tax laws of the state, over county assessors, and county boards of equalization,* . . . and county auditors . . . in the performance of their duties relating to taxation, and perform *any act or give any order* . . . *to any county board of equalization or to any county assessor* . . . as to the valuation of any property, . . . in any county, . . . or as to any other matter relating to the administration of the assessment and

To achieve the goal of "equality of taxation" specified in RCW 84.08.010(1) it is necessary that there be equality not only in the rate of taxation, but also in the assessment ratio applied to that property which is taken as the base to which the rate of taxation is applied. If equality is lacking in either area of tax spectrum (*i.e.* either the rate of taxation or the assessment ratio), there will be a lack of uniformity in the tax burden.

To enable the State Tax Commission to carry out the above-mentioned duties, the legislature granted the following powers enumerated in RCW 84.08.060, which reads in part as follows:

> [T]o direct and to order any county board of equalization *to raise . . . the valuation of any taxable property, . . .* or to perform or complete any other duty required by statute. The tax commission may require *any such board* of equalization to reconvene *after its adjournment for the purpose of performing any order . . .* made by the tax commission . . . . The commission may require *any county board of equalization to reconvene at any time* for the purpose of performing or completing *any duty* or taking *any action* it might lawfully have performed or taken at any of its previous regular July . . . meetings. (Italics ours.)

It is evident that the sweeping grants of power contained in RCW 84.08.060 were intentional. The legislature recognized the need for an agency clothed with sufficient supervisory authority to ensure "equality of taxation and uniformity of administration" in a tax structure badly fractionalized by 39 different county units. *State ex rel. Barlow v. Kinnear*, 70 Wn.2d 482, 423 P.2d 937 (1967). Not only is the authority clearly expressed in the afore-men-

taxation laws of the state, which, in the commission's judgment may seem just and necessary, to the end that all taxable property in this state shall be listed upon the assessment rolls and valued and assessed according to the provisions of law, and equalized between persons, firms, companies and corporations, and between the different counties of this state, and between the different taxing units . . . *so that equality of taxation and uniformity of administration shall be secured* and all taxes shall be collected according to the provisions of law." (Italics ours.)

tioned statute, but the same grant of authority is found in RCW 84.48.010, which relates to the authority of county boards of equalization.

Thus, county boards of equalization have only a limited power to reconvene. But, *in addition* to the several times fixed by statute (*i.e.* RCW 84.52.090 and RCW 84.56.400), the State Tax Commission may order *any such board* to reconvene *at any time* after its adjournment for the purpose of performing *any duty* it might lawfully have performed at *any* of its previous regular July meetings. RCW 84.48.010; RCW 84.08.060; *State ex rel. Barlow v. Kinnear, supra.* The power of the State Tax Commission to reconvene the July county board of equalization is not limited by the fact that the action to reconvene is taken in a later year.

Further, where, as here, the grant of power is plain and unambiguous it needs no interpretation. It means exactly what it says. *See State ex rel. Hagan v. Chinook Hotel, Inc.,* 65 Wn.2d 573, 399 P.2d 8 (1965); *In re Gand's Estate,* 61 Wn.2d 135, 377 P.2d 262 (1962); *In re Baker's Estate,* 49 Wn.2d 609, 304 P.2d 1051 (1956).

Boeing suggests that this interpretation may lead to abuses by the State Tax Commission. They maintain that the Tax Commission could cause the reassessment of all personal property as far back as July, 1936. However, no such abuse is claimed at this time. If the existing law does contain a potential opportunity for abuse, these deficiencies in the law should be directed to the attention of the legislature. The suggested correction is not a proper judicial function. *State ex rel. Hagan v. Chinook Hotel, supra,* and cases cited therein.

Therefore, the trial court did not err in holding that statutory authority existed for the assessment of supplemental personal property taxes by a reconvened July, 1965 board of equalization. Boeing is not entitled to a refund of such taxes.

Next, Boeing insists that it was unlawful for the board of equalization to assess interest on the principal amount of

unpaid taxes from March 27, 1967 to May 2, 1967. It is asserted that RCW 84.56.020[4] applies only to taxes assessed and levied in the normal course (*i.e.* payable in April of the year following the levy). It is said that no statute authorizes the imposition of interest on the principal amount of *additional* taxes imposed at a later date.

Boeing's assignment of error is without merit. The State Tax Commission reconvened the July, 1965 session of the board of equalization. Questions related to the imposition of interest must be considered within the framework of the session that was reconvened, and not merely in terms of the date on which the reconvened session met (*i.e.* March 21, 1967).

The tax in question was levied as a result of an equalized assessment ratio ordered by the reconvened July, 1965 board of equalization. Thus, the tax imposed was not an *additional* or *new* tax, it was merely a correction of the original tax and supplemental thereto. Since this was simply a part of the original taxing process with the board of equalization meeting which began in July, 1965, RCW 84.56.020 is applicable.

It is unnecessary to determine the earliest possible date on which interest could have begun to accrue on the delinquent tax. King County conceded that, under the facts of this case, the supplemental tax did not become delinquent until March 27, 1967, because the dollar amount of the supplemental tax was unascertained and could not have been paid before then.

However, if the basis of the county's position is adopted, it must be concluded that the initial date of delinquency is incorrect. The dollar figure of the tax was not computed and entered on the tax rolls until March 29, 1967. Since Boeing could not have paid the tax before that date, inter-

---

[4]RCW 84.56.020 reads in part as follows: "All taxes upon real and personal property made payable . . . shall be due and payable to the treasurer . . . on or before the thirtieth day of April in each year, after which date they shall become delinquent, and interest at the rate of eight percent per annum shall be charged upon such unpaid taxes from the date of delinquency until paid: . . . ."

est should not have been attached before then, according to the concession.

In summation, we hold that the trial court did not err in ruling that statutory authority existed for the assessment of interest in addition to the principal amount (*i.e.* the supplemental taxes). However, the effect of the county's concession is to change the initial date on which they can claim a delinquency for the purpose of collecting the interest. This case is remanded for correction of the amount of interest due on the supplemental tax in accordance with this opinion.

FINLEY, C. J., HILL, HUNTER, and McGOVERN, JJ., concur.