[No. 42221.    En Banc.    April 18, 1974.]

JOHN P. COOK, as *Guardian, Appellant,* v. THE STATE OF WASHINGTON, *Respondent.*

*R. M. Holt* (of *Cushman, Thomas & Holt*), for appellant.

*Slade Gorton, Attorney General,* and *Edward G. Holm* and *Angelo R. Petruss, Assistants,* for respondent.

*Duane Richards, Erle W. Horswill,* and *Horswill, Keller, Rohrback, Waldo & Moren,* and *Dan Sullivan,* amici curiae.

HAMILTON, J.—On July 29, 1969, the vehicle in which 13-year-old Karen Shockley was riding collided with a stump located next to the roadway on Highway 203 between Fall City and Carnation, Washington. Prior to the accident Karen had resided with her mother and three other children, one of whom was killed in the accident

in suit. Her father, divorced from her mother, resided in the eastern part of the United States and offered her no advice. Her mother had only an eighth grade education and Karen herself had been retained in school due to unsatisfactory grades.

As a result of the accident, Karen suffered an injury to her nervous system which caused paralysis from the waist down, a broken left shoulder, a broken right leg, injury to the left leg, broken ribs on the left side, broken left hip, a broken pelvis, a ruptured spleen requiring surgical removal, severe injury to the bladder, liver and kidneys requiring surgical repair, and a bone removal near the tailbone. She was hospitalized until January 22, 1970, when confined to a wheelchair she returned to her mother's home. During the hospitalization period, her mother was primarily and vitally concerned with Karen's health and recovery. The first time Karen or her mother learned of a potential liability on the part of the state was when her mother contacted an attorney concerning another matter on March 19, 1970. Thereafter, on March 27, 1970, a claim against the state, charging a failure to post warning signs and to remove the stump from the right-of-way, was filed on Karen's behalf by her present attorney. This claim was filed with the state auditor within 120 days after Karen's release from hospitalization, although the filing in fact occurred a full 242 days from the date of the accident.

The King County Superior Court dismissed the suit upon the basis that the requirements of RCW 4.92.100, our "nonclaim" statute, had not been met, in that more than 120 days had elapsed between the date of the accident and the filing of a claim.

The instant "nonclaim" statute is part of a statutory scheme which is set up to provide for liability of the state for the tortious conduct of its agents:

> The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation.

RCW 4.92.090 (Laws of 1963, ch. 159, § 2, p. 753; Laws of 1961, ch. 136, § 1, p. 1680);

All claims against the state for damages arising out of tortious conduct shall be presented to and filed with the state auditor within one hundred twenty days from the date that the claim arose. All such claims shall be verified and shall accurately describe the conduct and circumstances which brought about the injury or damage, describe the injury or damage, state the time and place the injury or damage occurred, state the names of all persons involved, if known, and shall contain the amount of damages claimed, together with a statement of the actual residence of the claimant at the time of presenting and filing the claim and for a period of six months immediately prior to the time the claim arose. If the claimant is incapacitated from verifying, presenting, and filing his claim in the time prescribed or if the claimant is a minor, or is a nonresident of the state absent therefrom during the time within which his claim is required to be filed, the claim may be verified, presented, and filed on behalf of the claimant by any relative, attorney, or agent representing him.

With respect to the content of such claims this section shall be liberally construed so that substantial compliance will be deemed satisfactory.

RCW 4.92.100 (Laws of 1967, ch. 164, § 2, p. 793; Laws of 1963, ch. 159, § 3, p. 753);

No action shall be commenced against the state for damages arising out of tortious conduct until a claim has first been presented to and filed with the state auditor. The requirements of this section shall not affect the applicable period of limitations within which an action must be commenced, but such period shall begin and shall continue to run as if no claim were required.

RCW 4.92.110 (Laws of 1963, ch. 159, § 4, p. 754). These statutes have been passed pursuant to and modifying the doctrine of sovereign immunity, and constitute a direct response to the legislative obligation to control and condition suits against the state as commanded by Const. art. 2, § 26.[1]

---

[1] "The legislature *shall direct by law, in what manner,* and in what courts, suits may be brought against the state." Const. art. 2, § 26. (Italics ours.)

In this appeal, the plaintiff contends that RCW 4.92.100 and .110, in barring Karen's action against the state for failure to file a timely claim, deprives Karen of the guarantees of the fourteenth amendment to the United States Constitution, including due process and equal protection of the laws. Plaintiff urges that the "nonclaim" statute in its entirety be declared invalid.

Although we reverse the judgment of the trial court and reinstate plaintiff's claim, we decline to do so on the broad, sweeping grounds advocated by plaintiff, for to do so would, in our view, abolish all vestiges of the doctrine of sovereign immunity and implicitly invalidate every other state, county, municipal, and district nonclaim statute, ordinance or provision.[2]

In support of the contention of total invalidity, plaintiff relies heavily on *Reich v. State Highway Dep't,* 386 Mich. 617, 194 N.W.2d 700 (1972). In that case the Michigan Supreme Court held that a state statute similar in substance to RCW 4.92.100 violated the due process provisions of the Michigan and federal constitutions, as well as the equal protection clauses of the federal constitution.

We find the *Reich* case distinguishable and its reasoning unpersuasive. The Michigan high court had previously interpreted the Michigan constitution and the tort claim statutes as providing an absolute waiver of sovereign immunity, thereby giving rise to a vested right of action. *Grubaugh v. St. Johns,* 384 Mich. 165, 180 N.W.2d 778 (1970); *Minty v. Board of State Auditors,* 336 Mich. 370, 58 N.W.2d 106 (1953). To the contrary, we in this state have not interpreted our tort claim waiver statutory scheme (RCW 4.92.090, .100 and .110), when viewed in pari materia and in the light of Const. art. 2, § 26, as amounting to a

---

[2]Some of the claim statutes affected and the agencies to which they relate are: RCW 4.96.020 (political subdivisions, including fire protection districts, flood control districts, cemetery districts and irrigation districts); RCW 35.31.020 and RCW 35.31.040 (charter and noncharter cities); RCW 36.45.010 (counties); RCW 38.52.205 (civil defense related activities); RCW 47.60.250 (Puget Sound ferry and toll bridge system); and RCW 77.12.270 (game damage).

total, absolute, irrevocable waiver of sovereign immunity. Rather, we have looked upon it as a somewhat limited and conditional waiver of sovereign immunity which does not, absent compliance with the notice requirement, ipso facto ripen into a viable vested right of action. *Nelson v. Dunkin,* 69 Wn.2d 726, 419 P.2d 984 (1966); *O'Donoghue v. State,* 66 Wn.2d 787, 405 P.2d 258 (1965). Thus, the Michigan high court's determination that, because of the vested right of action accruing under the absolute waiver of that state's sovereign immunity, the claim statute erects an unconstitutional discrimination between subclasses of tort-feasors, *i.e.,* private and governmental, and victims of negligent conduct, *i.e.,* victims of private negligence and victims of governmental negligence, becomes unpersuasive against the interpretation of a conditionally limited legislative waiver of sovereign immunity in this state.

We are satisfied that our legislature in granting its conditional waiver of governmental tort immunity, as evidenced by RCW 4.92.090, .100 and .110, was justifiably cognizant of its responsibilities under Const. art. 2, § 26 and of the realistic and practical differences between private tort-feasors and the state and its political subdivisions as potential tort-feasors. The state and its political subdivisions with the multitude of departments, agencies, officers and employees and their diverse and widespread activities, touching virtually every aspect of life within the state, render the state and its subdivisions inherently different from any ordinary private tort-feasor. Public funds as opposed to private funds are involved. The number of claims against governmental agencies is vastly greater than against any individual private tort-feasor. An ordinary private tort-feasor is normally immediately aware of an incident involving potential liability, whereas the claim filing statute is usually the only sure and certain means by which the state or its subdivisions may be alerted to potential liability arising from a governmental activity. These considerations we believe adequate to sustain the import of RCW 4.92.100 and

.110 against the constitutional challenge on due process and equal protection grounds advanced by *Reich*.

The remaining question, then, is whether within the subclass of victims of governmental tort there exists any due process or equal protection discordance. In this respect, it is our view that there does arise an incompatability with due process and equal protection requirements, but only in and with an inflexible and unyielding application of that portion of RCW 4.92.100, which provides:

> If the claimant is incapacitated from verifying, presenting, and filing his claim in the time prescribed or if the claimant is a minor, . . . the claim may be verified, presented, and filed on behalf of the claimant by any relative, attorney, or agent representing him.

Given Karen's minority, severe physical injuries, hospitalization, and major surgery, coupled with her mother's asserted grief, worry, and educational disadvantage, it would appear manifestly unjust and fundamentally unfair to apply the above-quoted portion of RCW 4.92.100 as to permit no excuse from strict compliance with the filing time requirement. In the first place, it is totally unrealistic to require that 13-year-old Karen, while lying severely injured and paralyzed in the hospital for 6 months, should, within 120 days of the accident, prepare and verify a claim or direct her mother or anyone else to do so on her behalf. In the second place, it would be almost as unconscionable to require that Karen's allegedly unlettered mother, stricken with the death of one child and greatly concerned over the survival of a second, ferret out the facts of the accident, the law pertaining to potential liability and the filing requirements, and thereupon file a claim as Karen's representative or solicit the aid of another to do so during the course of Karen's first 4 months in the hospital.

Certainly, the legislature in enacting the aforementioned proviso to RCW 4.92.100 could not have intended such a harsh and unjust result—a result which invidiously discriminates between those who are tortiously injured to the point of mental or physical incapacity for 4 or more months

and those who are more fortunate and suffer less disabling injuries. The possibility that a friend or relative may possess the foresight to file a timely claim on behalf of an incapacitated victim, in our view, provides too slender a reed to bridge the inherent discrimination, and it becomes arbitrary and unreasonable when it penalizes the incapacitated if a friend or relative through inadvertence or ignorance fails to act.

Early in this court's history, we recognized the manifest injustice of a rigid and unyielding imposition of time prescriptions in "nonclaim" provisions upon persons incapacitated by the accident in suit. We held that it became at least a question of fact whether incapacity from the accident involved prevented timely compliance with an applicable "nonclaim" provision. *Born v. Spokane*, 27 Wash. 719, 68 P. 386 (1902); *Ehrhardt v. Seattle*, 33 Wash. 664, 74 P. 827 (1903); *Ehrhardt v. Seattle*, 40 Wash. 221, 82 P. 296 (1905).

Commencing with *Ransom v. South Bend*, 76 Wash. 396, 136 P. 365 (1913), and extending through the introduction of provisos similar to the one here involved (*Haynes v. Seattle*, 87 Wash. 375, 151 P. 789 (1915), *Forseth v. Tacoma*, 27 Wn.2d 284, 178 P.2d 357 (1947), and *Kelleher v. Ephrata School Dist. 165*, 56 Wn.2d 866, 355 P.2d 989 (1960)), this court, without overruling the *Born* approach, tended to veer away from the doctrine there announced. We were in error in so doing.

█ Although there is a division of authority as to excusability from strict compliance with time limitations in "nonclaim" provisions among other state courts (*Tort Claims Against Public Entity—Notice*, Annot., 44 A.L.R.3d 1108 (1972)), we would now, in reinvigorating the *Born* holding, adopt the view of the Supreme Court of our neighboring State of Alaska, as set forth in *Maier v. Ketchikan*, 403 P.2d 34 (Alas. 1965), at 37:

> We adopt the view that failure to file a notice of claim within the time prescribed by the city charter may be excused because of the disability from which the claim

arose and until a reasonable time after the disability ceases. The essential justice of such a view persuades us to adopt it for this jurisdiction. If, as appellant contends, he was injured by the negligence of the city, it would be basically unfair to deprive him of recourse to the courts if the injuries suffered prevented him from complying with the notice requirements of the charter. To permit such a situation to occur would make it possible for the city to take advantage of and benefit from its own wrong. This would not be consistent with our traditional conception of fair play and substantial justice.

Any other holding would, in our view, do violence to due process and equal protection concepts. In such cases, where the facts of incapacity justify it, we would deem that 120 days from removal of the disability would constitute a reasonable time within which a claim could be filed.

Accordingly, we reverse the order of dismissal and remand the cause for trial on the merits.

HALE, C.J., and ROSELLINI, HUNTER, and BRACHTENBACH, JJ., concur.

UTTER, J. (concurring)—The primary issue presented by the dismissal of plaintiff-appellant's action for personal injury damages against the state is whether the 120-day filing period requirement of RCW 4.92.100 violates the constitutional protections of the equal protection and due process clauses of the Fourteenth Amendment. RCW 4.92.100 has never been constitutionally challenged in this court, although on one previous occasion we construed its provisions. *O'Donoghue v. State*, 66 Wn.2d 787, 405 P.2d 258 (1965).

The 120-day filing period requirement is unconstitutional as a denial of equal protection and due process to those persons asserting causes of action against the state for alleged tortious acts. The provision has no legitimate state interest supporting it which is required to permit discriminatory classification. It also operates in an arbitrary and unreasonable manner, denying the citizen due process.

I agree with the result reached by the majority opinion,

but disagree with its refusal to find a broad violation of the equal protection and due process clauses.

The test to be met is whether, under equal protection, the 120-day filing period requirement creates a classification which is reasonably related to any legitimate state interest, and whether under the due process of law a nonarbitrary, equitable and reasonable classification exists. *Nebbia v. New York*, 291 U.S. 502, 78 L. Ed. 940, 54 S. Ct. 505, 89 A.L.R. 1469 (1934); *Lloyd Garretson Co. v. Robinson*, 178 Wash. 601, 35 P.2d 504 (1934); *Clark v. Dwyer*, 56 Wn.2d 425, 435, 353 P.2d 941 (1960).

For these clauses of the Fourteenth Amendment to be invoked, there must be a single, identified class which is threatened by an invalid classification and there must be life, liberty, or property which is threatened by improper process. To identify the class of victims considered and the presence of any property right, the state's waiver of governmental immunity for tort liability must be analyzed.

If the government has waived its immunity in tort and is like all other potential tort-feasors in this aspect, then there is only one class of victims of tortious acts, and not two classes, dependent on whether the identity of the tort-feasor is government or private. If the government has waived its immunity in tort, it has created a cause of action—a property right—and may no longer frustrate proven claims by this once permissible defense.

I believe the text of RCW 4.92.090 abolishing governmental immunity and the case law that has interpreted it, clearly establish that our state has waived its immunity from tort liability. By this statute, the state has given rise to a cause of action which had not existed prior to its enactment because of governmental immunity. Not only does this waiver of governmental immunity in tort create a vested right in victims of tortious conduct by the state, it also places the state upon the same legal plane and subject to the same legal rules as other tort-feasors.

RCW 4.92.090, entitled "Tortious conduct of state—Liability for damages" was enacted in Laws of 1961, ch. 136, §

1 and was amended by Laws of 1963, ch. 159, § 2. We first construed RCW 4.92.090 in *Kelso v. Tacoma,* 63 Wn.2d 913, 390 P.2d 2 (1964). We there recognized our previous ruling that governmental immunity in tort existed, that it was for the legislature to change that condition, and found the legislature announced the change in our state's public policy by enacting RCW 4.92.090 in 1961. *Kilbourn v. Seattle,* 43 Wn.2d 373, 261 P.2d 407 (1953).

To further emphasize the clear change in policy as to tort immunity, we stated in *Kelso,* at page 918: "If there is any room for doubt as to what was intended by the 1961 statute, it has been removed by the amendment of the 1961 statute in the 1963 legislative session." This in part, changed the 1961 language of "consents to the maintaining of a suit or action against it for damages" to *"shall be liable* for damages." (Italics mine.) *Kelso* concluded by declaring the legislature had made its intention very clear to change the policy of the state and "[t]he doctrine of governmental immunity was not preserved . . ." *Kelso v. Tacoma, supra* at 918-19. *Hosea v. Seattle,* 64 Wn.2d 678, 393 P.2d 967 (1964).

The next case reviewing RCW 4.92.090 was *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 407 P.2d 440 (1965), where we again emphasized, at page 252:

> There can be no question but that by the enactment of Laws of 1961, ch. 136, § 1 (RCW 4.92.090) the legislature intended to abolish on a broad basis the doctrine of sovereign tort immunity in this state, and we have so held . . .

There are limitations in the *Evangelical* case but these limitations are substantive in character and pertain to the scope to be given the meaning of tort (discretionary and ministerial, for example) and do not refer at all to the procedural conditions established in an altogether different statutory provision (section .100), which relate to consent to suit only.

Based on our own previous conclusions and the unequivocal language of section .090, there can be no other conclu-

sion but that governmental immunity for tort liability has been waived in this state. This conclusion permits an application of the Fourteenth Amendment guarantees by which the 120-day filing period is under attack because we deal with a single class of victims and a property right in this cause of action.

The relationship of the waiver of tort immunity with the consent to be sued has been previously discussed in *O'Donoghue v. State, supra.* In deciding the question before it, the court noted, at page 788, that two distinct things occurred in the passage of chapter 136, Laws of 1961 (RCW 4.92). First, "the State of Washington *waived its sovereign immunity* and [second] *consented to action* against it for damages arising out of its tortious conduct." (Italics mine.) The court then provided the history of the filing period requirements, found the filing period which is now under constitutional attack was passed in 1963 and is a prerequisite to the beginning of the suit or action and is enacted pursuant to Const. art. 2, § 26. Thus, section .100 was not found to be a prerequisite to the waiver of tort immunity, but rather it conditions the beginning of the suit or action.

By so characterizing the filing period requirement, as enacted pursuant to article 2, section 26, the court recognized in *O'Donoghue,* at page 790, that the issue in interpreting section .100 was "procedural or remedial rather than one affecting a substantive right." The right referred to is the claim against the state, and the remedy is the means of enforcing the right to redress the injury. In this case the right is recognized by the waiver of tort immunity and we are then concerned only with the validity of limitations on the remedy procedures. In essence then, remedy is a procedure by law to enforce a right.

This difference between right and remedy, between waiver of tort immunity and consent to suit, is explicitly and forthrightly stated in *O'Donoghue,* at pages 790-91: "RCW 4.92.090 provides the right . . . [and] RCW 4.92.100 and 4.92.110 provide the procedure for the realiza-

tion of that right." The filing claim and the filing period are procedural requirements which may not be interpreted as conditions imposed on the substantive waiver of tort immunity.

Our case law first gave clear recognition to the difference between the state's waiver of tort immunity and its consent to suit in *Billings v. State*, 27 Wash. 288, 67 P. 583 (1902). In *Billings*, we affirmed a superior court dismissal of an action to recover in contract, damages caused by the misconduct of a state agent. The action was brought under an 1895 law which permitted suits against the state. The appellant argued that the provision permitting suit was not only the state's consent to suit, but was also the state's waiver of immunity in all business transactions. Finding the provision at issue was enacted pursuant to article 2, section 26, the court rejected appellant's contention and held, at page 293, "The state, by consenting to be sued, did not waive the right to defend" and "has retained all its legal rights" and "has not consented  . . .  to become responsible for the misconduct or negligence of its officers or agents". What was being emphasized in *Billings* was that article 2, section 26, directing the legislature to establish procedures for suing the state, did not impose new liabilities or responsibilities upon the state, nor was it a waiver of any legal defenses.

In *Riddoch v. State*, 68 Wash. 329, 123 P. 450 (1912), we had the first action against a governmental unit for damages for personal injuries. The action was dismissed by the superior court for lack of jurisdiction, and dismissal was affirmed by the Supreme Court. The court began its analysis by affirming the view in *Northwestern & Pac. Hypotheek Bank v. State*, 18 Wash. 73, 50 P. 586 (1897) and *Billings v. State, supra,* that article 2, section 26

> creates no cause of action—imposes no liability, as against the state, where none would exist independently of it. It merely directs the legislature to provide a *remedy* for causes of action recognized at common law as against the sovereign or created by statute.

(Italics mine.) *Riddoch v. State, supra* at 332. Thus, that legislation, enacted pursuant to the constitutional mandate, only provides a remedy and does not impose new liability or waive any defense. As in *Billings*, the *Riddoch* opinion distinguishes the consent to suit established pursuant to article 2, section 26, and the waiver of any immunities or defenses.

The *Riddoch* court then proceeded to announce the rule of nonliability for torts which was found to be based upon absence of obligation and not upon mere absence of remedy. The dismissal was then affirmed, at page 340, because

> There is no statute whereby this state has assumed a liability for the negligence or misfeasance of its officers or agents, and we find no established principle of law sustaining such a liability in the absence of such statutory assumption.

We now, however, have the legislative assumption of liability in tort due to the waiver of tort immunity in RCW 4.92.090, which if in existence in *Riddoch*'s case, would have permitted the cause of action.

In *State ex rel. Pierce County v. Superior Court*, 86 Wash. 685, 151 P. 108 (1915), article 2, section 26 was again recognized as an authorization to the legislature to control and regulate the right of suit, a matter separate and distinct from whatever legal defenses might be raised by the state once suit was commenced. This interpretation of the constitutional authority for consent to suit provisions has been consistently affirmed. *State ex rel. Robinson v. Superior Court*, 182 Wash. 277, 279, 282-83, 46 P.2d 1046 (1935); *Weber v. School Dist. 7*, 185 Wash. 697, 701-02, 56 P.2d 707 (1936); *State ex rel. Shomaker v. Superior Court*, 193 Wash. 465, 469-70, 76 P.2d 306 (1938); *State ex rel. Price v. Peterson*, 198 Wash. 490, 498-99, 88 P.2d 842 (1939); *State ex rel. Hamilton v. Superior Court*, 200 Wash. 632, 633-34, 94 P.2d 505 (1939); *State ex rel. Thielicke v. Superior Court*, 9 Wn.2d 309, 312-15, 114 P.2d 1001 (1941).

*Columbia Steel Co. v. State*, 34 Wn.2d 700, 209 P.2d 482

(1949), provides a demonstration of the difference between the waiver of immunity as a defense and consent to suit. In *Columbia Steel* the court found no statute which imposed liability on the state for interest upon awards to private parties for tax refunds, and thus denied such interest recovery though the suit was permitted. The court reasoned:

> The right to sue the state, when accorded by statute, extends no farther than to grant the plaintiff the right to bring his action and, if the evidence introduced before the trial court is sufficient to establish the state's liability, to recover against the state a judgment for the amount due . . .

*Columbia Steel Co. v. State, supra* at 712. Thus, the state may permit itself to be a defendant (consent to suit) yet reserve the right to raise all lawful defenses (immunities). *Pape v. Armstrong*, 47 Wn.2d 480, 287 P.2d 1018 (1955); *Bond v. State*, 70 Wn.2d 746, 749, 425 P.2d 10 (1967).

*Gross v. Washington State Ferries*, 59 Wn.2d 241, 367 P.2d 600 (1961), provides yet another example of our previous recognition of the distinction between immunity waiver and consent to suit. An entirely different set of statutory provisions was being evaluated (Laws of 1951, ch. 259, RCW 47.60 *et seq.*) but they established conditional rights of action against the Toll Bridge Authority under a scheme of provisions similar, yet unlike those of RCW 4.92.

In its analysis, the *Gross* court recognized, at page 250, "There is a distinction between *immunity from process,* which goes to the question of jurisdiction, and *immunity from liability,* which deals with the substantive law." (Italics mine.) Section 5 of chapter 259 was a *consent to liability* as given under the remaining provisions of the act, and section 6 was a *consent to suit*. The critical section 10 provided that, as a *condition to recovery,* a claim must be filed within 30 days after the claim accrued. The failure to meet the requirement of section 10 was held to deny the operation of section 5 because the provision conditioned recovery itself. However, the filing period of section .100 does not condition recovery or refer to the waiver of tort

immunity in section .090 at all, but merely conditions its own terms dealing with the consent to suit.

An example of the above analysis applied in the statutory scheme presently before us is presented in *Nelson v. Dunkin*, 69 Wn.2d 726, 419 P.2d 984 (1966). There, the court noted, at page 729, that in 1963 when the legislature waived "its governmental immunity as to tort claims . . . it required, as a prerequisite to suit against the state, the filing of a claim . . ." The filing of the claim was not found to condition the waiver of tort immunity but was a condition precedent to the maintenance of an action.

Finally, in *Kelso v. Tacoma*, 63 Wn.2d 913, 918, 390 P.2d 2 (1964), in which we first recognized the section .090 waiver of tort immunity, the state had asserted that the section .090 waiver "specifies that the state merely consents to be sued and this does not create any liability . . ." We declined to adopt this "technical construction" of section .090 which clearly stated the legislative intent to waive its tort immunity.

In summation, our previous case law has differentiated between the state's consenting to be sued and its substantive liability as affected by waivers of immunity. These cases have made the differentiation because article 2, section 26 gave the legislature the right to consent to be sued but does not waive any defenses or immunities. Consistent with this long line of case law analysis, we must hold that our constitution provides merely for legislative consent to suit, as enacted in sections .100 and .110, which is distinct from the legislative waiver of immunity, as in tort in section .090. *See Muskopf v. Corning Hosp. Dist.*, 55 Cal. 2d 211, 359 P.2d 457, 11 Cal. Rptr. 89 (1961).

Given that the waiver of tort immunity is unbridled by procedural conditions pertaining to the consent to be sued, we may then apply the equal protection and due process tests to the 120-day filing requirement to decide whether it is unconstitutional. Therefore, the cause of action in this case is entitled, under equal protection and due process, to

the same protection against discriminatory or arbitrary interference as any other right or as if brought by any other victim of tortious conduct.

The plaintiff's cause of action involved an accrued vested right—the right to proceed against the governmental tort-feasor—which the legislature may not divest or burden in violation of equal protection or due process.

I believe there is no legitimate state interest supporting the 120-day filing period requirement under an equal protection analysis because by waiving immunity from tort liability the state has placed itself on the same legal footing with other tort-feasors. The reasons usually advanced for the differential treatment exercised in section .100 are no longer valid. The basic reason advanced to justify treating the state differently is to provide the prompt submission of *notice* of a pending claim so as to enable the state to conveniently make an investigation of facts, witnesses, and to obtain other information. *See* S. Jour. 928 (1967). Modernly, such rationale, especially when the state has waived such argument as to its liability, ceases to be legitimate because the state has the same capability of investigation and defense as any other potential defendant. This denies it the right to impose special notice requirements.

The state has investigators—civilian and police—and also, many full-time attorneys assigned to departments and to the Attorney General. This personnel, in fact, makes the state in most instances better equipped to investigate and defend negligence suits than most private tort-feasors, for whom no special notice privileges are provided by law.

The reality of the above is apparent in this case. The plaintiff was injured in a one-automobile accident to which the state patrol responded and from which the injured party received hospitalization in a state facility. Thus, in fact, various instrumentalities of the state had notice of an accident and thereby of a potential claim against the state. Yet, under section .100 this in-fact notice is ignored and a duty is placed on the plaintiff to provide written notice

within a set time frame. There being no legitimate state interest to support this special privilege to the state, its continued operation denies equal protection of the law to those victimized by state tortious conduct.

In addition, absent any legitimate state interest, the filing period requirement becomes purely arbitrary and capricious and denies those with rights against the state any remedy if the required notice of claim is violated. Due process of law does not countenance the variance of treatment to state victims of tort, as compared to the other members of the natural class of victims of tort, the private victims.

What is involved in this case is no less than a citizen seeking to secure redress in the courts of a jurisdiction that no longer raises the discredited defense of governmental immunity in tort. Special burdens in classification may often be necessary but they are null and void where they are not directed at the elimination of some social evil or the advancement of some public good. Finding neither, I believe the 120-day filing period requirement is unconstitutional.

FINLEY and WRIGHT, JJ., concur with UTTER, J.

STAFFORD, J. (concurring in part and dissenting in part) —I agree with the majority's holding that the doctrine of sovereign immunity is still viable and that appellant's constitutional challenge is without merit, based as it was on the grounds advanced in *Reich v. State Highway Dep't*, 386 Mich. 617, 194 N.W.2d 700 (1972). However, I do not agree with the holding that, under RCW 4.92.100, "where the facts of incapacity justify it, we would deem that 120 days from removal of the disability would constitute a reasonable time within which a claim could be filed." To that extent I dissent.

The majority's attempt to reach a happy compromise for this tragic case is clearly result-oriented judicial legislation. It is conceived in total disregard of the explicit language in article 2, section 26 of the state constitution as well as the

clear wording of RCW 4.92.100 enacted pursuant thereto.

Const. art. 2, § 26 provides:

> The *legislature* shall direct by law, in what manner, and in what courts, suits may be brought against the state.

(Italics mine.) Clearly, the power to direct the manner in which suits may be brought against the state is given solely to the *legislature*. The judiciary is not authorized to assume or even to share that power. To do so is pure usurpation of a power that is not ours. Pursuant to Const. art. 2, § 26, the legislature enacted RCW 4.92.100 which reads in part:

> *All claims* against the state for damages *arising out of tortious conduct* shall be presented to and filed with the state auditor *within one hundred twenty days from the date that the claim arose*. . . . If the claimant is incapacitated from verifying, presenting, and filing his claim in the time prescribed or *if the claimant is a minor . . . the claim may be verified, presented, and filed on behalf of the claimant by any relative, attorney, or agent* representing him.

(Italics mine.) The statute specifically requires the filing of *all* tort claims against the state "within one hundred twenty days from the date that the claim arose." No exception is provided for minors. Nevertheless, the majority bases its holding on the tenuous ground that "the legislature in enacting the . . . proviso to RCW 4.92.100 could not have intended such a harsh and unjust result . . . ." The weakness of this approach is found in the statute's explicit language. It leaves no room for either statutory construction or interpretation. Yet, the majority contends the legislature did not mean what it explicitly said.

Whether the legislature acted wisely by creating the challenged restriction is not a proper subject for judicial determination. *McKinney v. Estate of McDonald,* 71 Wn.2d 262, 264, 427 P.2d 974 (1967); *Port of Tacoma v. Parosa,* 52 Wn.2d 181, 192, 324, P.2d 438 (1958). The fact that the legislature made no exception for minors does not give rise to some latent judicial power to do so by means of a volunteered additional proviso. This is true even if it could be

said the legislative omission was inadvertent. *State v. Roth*, 78 Wn.2d 711, 715, 479 P.2d 55 (1971); *Boeing v. King County*, 75 Wn.2d 160, 166, 449 P.2d 404 (1969); *State ex rel. Hagan v. Chinook Hotel, Inc.*, 65 Wn.2d 573, 578, 399 P.2d 8 (1965); *Vannoy v. Pacific Power & Light Co.*, 59 Wn.2d 623, 629, 369 P.2d 848 (1962). If there is a need for such an exception, it must be initiated by the legislature, not by the courts. *Boeing v. King County, supra; State ex rel. Hagan v. Chinook Hotel, Inc., supra.*

Finally, the solution volunteered by the majority will create a new, unworkable nonclaim statute that will virtually destroy the nonclaim concept by indirection. If, as the majority holds, the period of limitation does not begin to run until removal of the disability, when will that event occur? The so-called limitation is completely open ended. It is entirely probable that alleged damages will occur which will give rise to a tort claim against the state, wholly unknown to any state agency (*i.e.,* a one-car accident on an allegedly negligently designed section of highway). If no claim is filed for 10 to 20 years (or even longer in the case of mental incompetency), how could that state possibly defend against the allegations?

The legislature has provided a sensible, workable approach to this perplexing problem. The state has been protected from stale and possibly unknown claims. On the other hand, minors have been protected by providing them with a wide range of persons authorized to file the requisite claim. In short, the legislature has attempted to balance the equities. If the 120-day filing period is too short, or if a wider range of persons should be authorized to file claims, the legislature, not the judiciary, is constitutionally empowered to make the necessary adjustment.

This dissent is not inconsistent with our recent decision in *Thomas v. Przbylski*, 83 Wn.2d 118, 516 P.2d 207 (1973). In *Przbylski*, the court reasoned that, if a claim is made against a governmental entity for *contribution* or *indemnification*, it cannot be said that a claim has arisen until a claimant has had a judgment rendered against him or he

618

has made payment in an action against him. In that case, the court properly held the 120-day limitation period would begin to run at the time the claim, as thus defined, arises. The result in *Przbylski* was reached by means of proper judicial interpretation (*i.e.*, a resolution of the date on which a claim is deemed to arise). In *Przbylski*, it was clear, however, that the parties were at least limited by the overriding statute of limitations for torts. The time for filing claims was not left indefinite and potentially unresolvable, as in the instant case.

For the reasons stated, I dissent.